**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR
A WARRANT TO SEARCH AND SEIZE**

1:21-mj-2018 TMD

√  ____ FILED   ___ ENTERED
____ LOGGED   _____ RECEIVED

**11:05 am, Jul 27 2021**

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

I, Ryan H. Campbell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search warrant authorizing the examination of

property—an electronic device—which is currently in law enforcement possession, and

the extraction from that property of electronically stored information described in

Attachment B.

2.    I am a Special Agent with the U.S. Department of Treasury, Treasury

Inspector General for Tax Administration ("TIGTA"), Cybercrime Investigations

Division, where I have been employed since January 31, 2021. Prior to my employment

with TIGTA, I was a Special Agent with the Department of Homeland Security, United

States Secret Service ("USSS") from January of 2009. I am a graduate of the Criminal

Investigative Training Program conducted at the Federal Law Enforcement Training

Center in Glynco, Georgia, as well as the USSS Special Agent Training Course

conducted in Beltsville, Maryland. During my service in federal law enforcement, I have

been assigned to the USSS Denver Field Office Electronic Crimes Task Force and, later,

the USSS Washington Field Office Electronic Crimes Task Force, where I was

responsible for enforcing federal criminal statutes relating to the use of computers and the

internet. As a Special Agent, I continue to receive training and education related to the

investigation and prosecution of computer and other high-tech related crimes. During my

service in federal law enforcement, I have been responsible for the investigation of a

wide variety of federal criminal violations including tax fraud, wire fraud, bank fraud, and cyber and computer related criminal activities, and I have executed search warrants involving electronic devices, e-mail accounts, computers, and cellular telephones.

3.      This Affidavit is based on my own personal knowledge, training, and experience, as well as information provided to me by other law enforcement officers and witnesses, and my review of documents, reports, and records during the course of this investigation. I have not included in this Affidavit each and every fact known to me about this investigation. Rather, I have included only enough facts sufficient to establish probable cause for the issuance of the requested warrant.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.      The property to be searched is (i) an Apple iPhone 12 Pro Max, International Mobile Equipment Identity (IMEI) number 351572595664379, and (ii) an Apple iPhone 12, IMEI number 353039112780573 (the "Devices"). The Devices are currently located at Treasury Inspector General - Tax Administration Office, 5000 Ellin Rd, Ste C8-100, Lanham, MD 20706. Together, these are referred to as the "Devices" in this affidavit.

5.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

### *The Economic Injury Disaster Loan Program*

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, was a federal law enacted on or about March 27, 2020,

which was designed to provide emergency financial assistance to Americans suffering economic harms caused by the COVID-19 pandemic. Two sources of relief provided by the CARES Act were an expansion of the Economic Injury Disaster Loan ("EIDL") program and the establishment of the Paycheck Protection Program.

7.      The EIDL program is a U.S. Small Business Administration ("SBA") program that provides low-interest loans to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

8.      To obtain an EIDL, a qualifying business must submit an application to the SBA and provide information about its operations, including its number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in that same period. In the case of EIDLs for COVID-19 relief, that period was specified as the 12-month preceding January 31, 2020.

9.      To qualify for an EIDL for COVID-19 relief, a business must have operated during the 12-month preceding January 31, 2020. Businesses created on or after February 1, 2020, are not eligible for an EIDL.

10.     To determine whether an applicant is eligible for an EIDL, and to determine the amount of an EIDL to award an eligible applicant, the SBA relies primarily on the self-reported information provided by the applicant concerning the operations of the small business, including the number of people employed by the business, gross revenues for the 12-month period preceding the disaster, and the cost of goods sold for

that same period. The EIDL applicant must certify that all of the information provided in the application is true and correct to the best of the applicant's knowledge.

11.     EIDL proceeds must be used by the applicant to meet ordinary and necessary financial obligations that cannot be met as a direct result of the disaster, such as payroll costs, salaries, sick leave, production costs, rent, and mortgage payments.

12.     The CARES Act also authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of each advance is determined by the number of people employed by the business, as certified by the applicant. These advances of up to $10,000 do not have to be repaid.

### *Overview of IP Addresses*

13.     An Internet Protocol address ("IP address") is an address that a computer uses to communicate over the internet, similar to that of a street address for a house. There are two types of IP addresses currently in use, IP address version 4 ("IPv4") and IP address version 6 ("IPv6").

  a.  IPv4 is made up of four numbers (referred to as "octets") separated by the "period" character. An example of this is 72.200.20.169. Due to the number of devices on the internet today, IPv4 was running out of addresses, so IPv6 addresses were implemented.

  b.  IPv6 is made up of 8 "chunks" of alpha-numeric values (referred to as "hextets") and are separated by the "colon" character. An example of this is 2600:8807:7fo2:0:98f9:68de:f4e4;b618. Unlike IPv4 addresses, there are plenty of IP addresses that can be assigned.

c.  Based on my training and experience, I know that because of the amount

of IPv6 addresses and software/hardware limitations of the internet,

Internet Service Providers ("ISPs"), like Comcast, AT&T, or Verizon,

often assign a large amount of IPv6 addresses to one subscriber.

Specifically, according to the Regional Internet Registries providing

internet resource allocations, it is common for ISPs to assign one half of

an IPv6 address (the first four "chunks" or "hextets") to a specific

subscriber. Meaning the last four "chunks" or "hextets" do not matter for

purposes of identifying a subscriber. For example, this means that the

same subscriber is usually assigned IPv6

2600:8807:7fo2:0:98f9:68de:f4e4:b618 and

2600:8807:7f02:0:585f:68de:f4e4:a23.

### *Overview of yopmail.com*

14.  During this investigation, TIGTA agents have identified EIDL

applications that list a yopmail.com e-mail addresses as the contact e-mail address in the

application.

15.  Yopmail.com is an online service that provides free and disposable e-mail

addresses to the public. According to their publicly accessible website, there is no

registration or password required and messages sent to a yopmail.com account are only

kept for eight days before being deleted from the system. A yopmail.com account cannot

be used to send e-mail. It can only be used to receive e-mails.

16.     In my training and experience, individuals committing fraud utilize this type of e-mail in fraud schemes because it limits their digital "footprint" and leaves little e-mail evidence for law enforcement to collect.

*Calah Williams Caused the*
*Submission of Fraudulent EIDL Applications*

17.     TIGTA is investigating Calah Williams for EIDL fraud. Based on the investigation to date, TIGTA has learned that: (i) Williams's residence has been used as a business address for fraudulent EIDL applications, (ii) a phone number associated with Williams's residence has been used as a phone number for fraudulent EIDL applications, and (iii) the IP address provisioned to Williams's residence has been used to submit fraudulent EIDL applications.

18.     From on or about March 31, 2020, to May 17, 2021, an analysis of IRS computer logs and SBA EIDL application logs revealed Comcast IP addresses that indicated potential fraud against the IRS and the SBA. This activity included the misuse of IRS systems to verify taxpayer information as well as submitting approximately 36 fraudulent EIDL applications to the SBA.

| IP Addresses | |
|---|---|
| 2601:c0:8102:8980:7cac:5cc:f98f:d917 | 2601:c0:8102:8980:14b2:4aca:d896:dfbd |
| 2601:c0:8102:8980:2d67:d065:6cc3:1390 | 2601:c0:8102:8980:a5d2:6129:efb6:6cb |
| 2601:c0:8102:8980:3472:76a3:dd5b:4be3 | 2601:c0:8102:8980:54c6:973a:4ca5:7ecc |
| 2601:c0:8102:8980:ada7:da33:8e77:3472 | 2601:c0:8102:8980:90a:155c:49b7:1f13 |
| 2601:c0:8102:8980:1550:3ccd:609e:899e | |

19.     Comcast records for the IP addresses in question revealed the following information:

   a.   Subscriber Name: Calah Williams;

   b.   Subscriber Phone Number: (404) 661-7515; and

   c.   Subscriber Address: 600 Phipps Blvd, NE, Apt 2111, Atlanta, GA
        30326.

20.     On March 3, 2021, TIGTA agents contacted the property manager of the building where Williams resides, who verified that Calah Williams is currently the tenant in apartment unit #2111. The property manager also stated that Calah Williams has been assigned parking spot number #398 in the apartment parking garage.

21.     On or around June 6, 2020, an EIDL application was electronically submitted to the SBA for a business named "Melinda Jacobs Farms," located in Ballwin, Missouri. The phone number listed on the EIDL application is (404) 661-7515, which Comcast records show to be associated with Calah Williams and her residence during the timeframe the application was submitted.

22.     Analysis of the EIDL application submitted for "Melinda Jacobs Farms" list a Federal Tax ID number matching the business owners Social Security Number ("SSN"); further investigation revealed that the individual associated with the SSN listed, Melinda Jacobs, is deceased. According to IRS records, the date of death was May 12, 2018. The EIDL application using the SSN from the deceased party was submitted on June 6, 2020.

23.     Further analysis of the EIDL application shows a bank account ending in 5633, held at JP Morgan Chase. The same bank account ending in 5633 was listed on 11 additional EIDL applications submitted between June 22, 2020, and July 2, 2020.

24.     Based on my training and experience, I know the use of the same bank account for multiple businesses with different addresses and different owners is an indicator of EIDL fraud. It is highly unusual for legitimate businesses with different owners to commingle funds.

25.     The following table lists EIDL applications submitted by the IP address assigned to Williams's residence, between July 30, 2020, and March 12, 2021.

1:21-mj-2018 TMD

| Count | Date of EIDL Application Submission | Business Name | Address | Owner | Bank Acct ending in | Email: |
|---|---|---|---|---|---|---|
| 1 | 07/30/2020 | Alba Navarro Realty | 1509 W Virginia Street Moses Lake, WA 98837 | Alba Navarro | 7023 | Anavarro2706@yopmail.com |
| 2 | 08/31/2020 | John Swicegood Medicine | 216 N Greenwood Ave Fort Smith, AR 72901 | John Swicegood | 5258 | jswicegood4631@yopmail.com |
| 3 | 08/31/2020 | Mark Teeter Medical Center | 11905 Ponderosa Drive Fort Smith, AR 72916 | Mark Teeter | 4494 | mteeter1413@yopmail.com |
| 4 | 09/03/2020 | Mark Reiner Medical | 1912 Cherrywood Drive Jonesboro, AR 72404 | Mark Reiner | 0489 | mreiner6169@yopmail.com |
| 5 | 09/03/2020 | Brian Stiefvater Medical | 8 Arles Drive Little Rock, AR 72223 | Brian Stiefvater | 1598 | bstiefvater0283@yopmail.com |
| 6 | 01/15/2021 | Debra Schooley Realty | 555 W Northern Ave Coolidge, AZ 85128 | Debra Schooley | 6587 | realtors33-1@yahoo.com |
| 7 | 01/15/2021 | Debra Donner Realty | 8200 State Highway 165 Rye, CO 81069 | Debra Donner | 6587 | realtors33-2@yahoo.com |
| 8 | 01/15/2021 | Amanda Lee Realty | 1184 W Macaw Dr Chandler, AZ 85286 | Amanda Lee | 6587 | realtors33-amanda@yahoo.com |
| 9 | 01/15/2021 | Amanda Dana Realty | 4729 E Sleepy Ranch Rd Cave Creek, AZ 85331 | Amanda Dana | 6587 | adana@getairmail.com |
| 10 | 01/15/2021 | Amanda Johnson Realty | 6141 N Little Papoose Drive Prescott Valley, AZ 86314 | Amanda Johnson | 6587 | ajohnson0480@yopmail.com |

1:21-mj-2018 TMD

| Count | Date of EIDL Application Submission | Business Name | Address | Owner | Bank Acct ending in | Email: |
|---|---|---|---|---|---|---|
| 11 | 01/16/2021 | Mandy Leavit Realty | 7548 E Pampa Ave Mesa, AZ 85212 | Mandy Leavit | 6587 | mleavitt4989@yopmail.com |
| 12 | 01/16/2021 | Annhua Chen Realty | 440 Carnegie Drive Milpitas, CA 95035 | Annhua Chen | 6587 | achen3727@yopmail.com |
| 13 | 01/16/2021 | Tiara Love Realty | 4601 Greeley Ave Kansas City, KS 66104 | Tiara Love | 3781 | diazhahenderson@gmail.com |
| 14 | 01/16/2021 | Bina Alam Realty | 504 W Flores St, Apt 11 Tucson, AZ 85705 | Bina Alam | 6587 | balam5641@yopmail.com |
| 15 | 01/16/2021 | Winston Normil Realty | 5501 Glenridge Dr Atlanta, GA 30342 | Winston Normil | 3781 | demetriadaniel1@gmail.com |
| 16 | 01/16/2021 | Laura Wilkinson Realty | 3918 Nash Blvd Norton, OH 44203 | Laura Wilkinson | 6587 | lwilkinson8625@hotmail.com |
| 17 | 01/16/2021 | Marina Ivanovsky Realty | 52 Ranch Ridge Rd Little Rock, AR 72222 | Marina Ivanovsky | 8722 | mivan0349@yopmail.com |
| 18 | 01/16/2021 | Tiffany Ivanovsky Realty | 1810 Cattle Dr Magnolia, TX 77354 | Tiffany Ivanovsky | 8722 | tivanovsky4519@yopmail.com |
| 19 | 01/16/2021 | Gregory Ivanovsky Realty | 18014 River Cir, Apt 2 Canyon Country, CA 91387 | Gregory Ivanovsky | 8722 | givanovsky4208@yopmail.com |
| 20 | 01/16/2021 | Minh Vudinh Realty | 106 Claremont Ave Long Beach, CA 90803 | Minh Vudinh | 8722 | mvudinh2794@yopmail.com |

1:21-mj-2018 TMD

| Count | Date of EIDL Application Submission | Business Name | Address | Owner | Bank Acct ending in | Email: |
|---|---|---|---|---|---|---|
| 21 | 01/17/2021 | Christine Vudinh Realty | 106 Claremont Ave<br>Long Beach, CA 90803 | Christine Vudinh | 8722 | cvudinh3188@yopmail.com |
| 22 | 01/17/2021 | Claudia Anaya Realty | 10425 Solo St<br>Norwalk, CA 90650 | Claudia Anaya | 8722 | canaya4105@yopmail.com |
| 23 | 01/17/2021 | Cherly Anaya Realty | 6490 NW 186th St, Apt 531<br>Hialeah 33015 | Cherly Anaya | 8722 | canaya7378@yopmail.com |
| 24 | 01/17/2021 | Cliserio Acuna | 1277 Navajo Dr, Apt 4<br>Bullhead City, AZ 86442 | Cliserio Acuna | 8722 | cacuna2120@yopmail.com |
| 25 | 01/17/2021 | Chanel Anaya Realty | 9979 Delicate Dew St<br>Las Vegas, NV 89183 | Chanel Anaya | 8722 | canaya1949@yopmail.com |
| 26 | 01/17/2021 | Cassandra Anaya Realty | 29383 Longleaf St<br>Menifee, CA 92584 | Cassandra Anaya | 8722 | canaya7900@yopmail.com |
| 27 | 01/17/2021 | Carlos Anaya Realty | 7370 Bachelors Button Drive<br>Las Vegas, NV 89131 | Carlos Anaya | 8722 | canaya1624@yopmail.com |
| 28 | 01/17/2021 | Celia Anaya Realty | 3305 E Rome Blvd, Apt 3027<br>North Las Vegas, NV 89086 | Celia Anaya | 8722 | canaya1934@yopmail.com |
| 29 | 01/17/2021 | Cesar Anaya Realty | 7397 Elm St<br>San Bernardino, CA 92410 | Cesar Anaya | 8722 | canaya2806@yopmail.com |
| 30 | 01/18/2021 | Ashley Dunn Realty | 2802 N 39th Dr<br>Phoenix, AZ 85009 | Ashley Dunn | 8722 | adunn3674@yopmail.com |

1:21-mj-2018 TMD

| Count | Date of EIDL Application Submission | Business Name | Address | Owner | Bank Acct ending in | Email: |
|---|---|---|---|---|---|---|
| 31 | 01/19/2021 | Paul Zimmerman Realty | 101 S Pierce St Portland, IN 47371 | Paul Zimmerman | 8722 | pzimmerman1483@yopmail.com |
| 32 | 01/19/2021 | Kristina Maritczak | 1901 Jefferson Ave, Ste 105 Tacoma, WA 98402 | Kristina Maritczak | 8722 | kmaritczak8345@yopmail.com |
| 33 | 01/19/2021 | Kirk Rector Realty | 3516 S 47th St, Ste 101 Tacoma, WA 98409 | Kirk Rector | 8722 | krector3985@yopmail.com |
| 34 | 01/19/2021 | Sharon Alger Realty | 3100 NW Bucklin Hill Road, Ste 117 Silverdale, WA 98383 | Sharon Alger | 4323 | salger9649@yopmail.com |
| 35 | 01/19/2021 | Rebecca Lawson Realty | 613 Marine Drive Bellingham, WA 98225 | Rebecca Lawson | 4323 | rlawson5893@yopmail.com |
| 36 | 03/12/2021 | KJ & S Tile, LLC | 4200 Winderlakes Dr Orlando, FL 32835 | Joshua Holmes | 4885 | realtors33-1@yahoo.com |

26.     Based on my training and experience, I believe that there are numerous red flags for the EIDL application filings identified in the table:

   a.   Many of the filings use yopmail.com accounts, which offer functionalities that are not those that would be desired by a normal business. As explained above, yopmail.com requires no registration or password, cannot be used to send e-mail, and messages sent to a yopmail.com account are only kept for eight days before being deleted from the system.

   b.   Many of the e-mail addresses use a similar naming convention: first initial, last name (or some portion of the last name), and last four of the SSN of the registered owner listed on the EIDL application.

   c.   Many of the applications list the same bank account. Based on my training and experience, I know that the use of the same bank account for multiple businesses with different addresses and different owners is an indicator of EIDL fraud. It is highly unusual for legitimate businesses with different owners to commingle funds.

   d.   Many of the business names contain the name of the loan applicant.

   e.   Many of the business names contain the word "realty."

27.     Further scrutiny into the applications reveals additional red flags. The "John Swicegood Medicine" EIDL application lists a Federal Tax ID that matches the listed business owner's SSN. This fact was noted by the SBA as one of the reasons the application was declined. The SBA also attempted to contact the purported applicant using the phone number provided on the application but discovered that the listed phone number did not belong to the purported applicant. The SBA also noted that they referred

this EIDL application to the fraud department, declined the application, and marked it as potential 'identity theft'.

28.　The SBA evaluated the EIDL application for the "Mark Teeter Medical Center" and noted that:

a.　A "public records search did not find the business," the "Bank account or routing number could not be verified," and the "Bank account could not be confirmed to be associated with the business."

b.　According to the EIDL application, "Mark Teeter Medical Center" was listed as a Sole Proprietorship with a Gross Revenue of $55,000 in Tax Year 2019. According to IRS records, for the Tax Year 2019 no Schedule C was filed for "Mark Teeter Medical Center," nor the SSN associated with the Sole Proprietorship.

c.　The EIDL application indicates that "Mark Teeter Medical Center" employs seven employees. If a business lists employees, they are required to file a Form 941 showing wages, tips, taxes withheld, etc. for each employee. According to IRS records, no Form 941 has been filed for "Mark Teeter Medical Center."

29.　The SBA evaluated the EIDL application for "Mark Reiner Medical" and noted that:

a.　On September 3, 2020, the bank account information was updated. The bank account originally supplied on the application ended in 0489, held by Sutton Bank. The updated bank account ended in 3097, held by

MetaBank. The "Name On Account" was also changed from "Mark Reiner Medical" to "Mark Reiner."

b.   On September 10, 2020, the SBA could not locate any records of the business in a Public Records search.

c.   According to the EIDL application, "Mark Reiner Medical" was listed as a Sole Proprietorship with a Gross Revenue of $57,000 in Tax Year 2019. According to IRS records, for the Tax Year 2019 a Schedule C was filed showing $4,267 in gross receipts, but no business name was listed on the Schedule C.

d.   The EIDL application indicates that "Mark Reiner Medical" employs five employees. According to IRS records, no Form 941 had been filed for "Mark Reiner Medical."

30.   The SBA evaluated the EIDL applications for "Brian Stiefvater Medical" and noted that:

a.   The EIDL application was marked as potential "identity theft" due to a phone call on December 11, 2020, from an individual identifying himself as Brian Steifvater, who stated that he did not authorize and he never submitted any application.

b.   According to the EIDL application, "Brian Stiefvater Medical" was listed as a Sole Proprietorship with a Gross Revenue of $55,000 in Tax Year 2019. According to IRS records, for the Tax Year 2019 no Schedule C was filed for "Brian Stiefvater Medical," nor the SSN associated with the Sole Proprietorship.

  c. The EIDL application indicates that "Brian Stiefvater Medical" employs seven employees. According to IRS records, no Form 941 has been filed for "Brian Stiefvater Medical."

  31. Many of the other EIDL applications evaluated by the SBA revealed tax-related discrepancies of (i) a sole proprietorship listing a 2019 gross revenue that could not be matched up with IRS records because there was no 2019 tax return that could be matched either by company name or SSN of the purported owner and (ii) the EIDL application claiming that the company employed individuals, but the required Form 941 had not been filed with the IRS for the company. This is true for "Debra Schooley Realty," "Debra Donner Realty," "Amanda Lee Realty," "Amanda Dana Realty," "Amanda Johnson Realty," "Mandy Leavitt Realty,""Annhua Chen Realty," "Tiara Love Realty," "Bina Alam Realty," "Winston Normil Realty," "Laura Wilkinson Realty," "Tiffany Ivanovsky Realty," "Gregory Ivanovsky Realty," "Christine Vudinh Realty," "Claudia Anaya Realty," "Cherly Anaya Realty," "Cliserio Acuna Realty," "Chanel Anaya Realty," "Cassandra Anaya Realty", "Carlos Anaya Realty," "Celia Anaya Realty," "Cesar Anaya Realty," "Ashley Dunn Realty," "Paul Zimmerman Realty," "Kirk Rector Realty," and "Rebecca Lawson Realty."

  32. For the "KJ & S Tile, LLC" EIDL application, the company is listed as a Corporation with a Gross Revenue of $211,555 in Tax Year 2019 and thirteen employees. According to IRS records, "KJ & S Tile, LLC" last filed a return in TY 2018. No Schedule C nor Form 941 were filed for the Tax Year 2019.

*The Search Warrant at Williams's Residence*

33.     On July 1, 2021, TIGTA executed a search warrant at Williams's

residence. The search warrant permitted TIGTA to seize the Devices as evidence. But

given the parameters of the search warrant to search the residence, to search the data on

the devices, an additional search warrant is needed.

34.     The Devices are currently in the lawful possession TIGTA. The Devices

are currently in storage at a TIGTA Office located at, 5000 Ellin Rd, Ste C8-100,

Lanham, MD 20706. In my training and experience, I know that the Devices are stored in

a manner in which their contents are, to the extent material to this investigation, in

substantially the same state as they were when the Devices first came into TIGTA's

possession.

*Williams's scheme involved the use of phones*

35.     On January 16, 2021, the phone number (404)747-8523 was used to create

the email address of lwilkinson8625@yahoo.com from the Comcast IP address assigned

to Williams's residence. That same day, an SBA EIDL application was submitted using

the e-mail address lwilkinson8625@yahoo.com in the name of Laura Wilkinson from the

residence IP address of Williams.

36.     On March 12, 2021, the phone number (404)747-8523 was listed on a

SBA EIDL application in the name of Joshua Holmes for the business KJ & S Tile with

an address of 4200 Winderlakes Dr., Orlando, FL 32835. The SBA EIDL application was

applied for from the IP address assigned to Williams's residence.

37.     Phone number (404)747-8523 is also listed in the subscriber information

as the Recovery SMS for the e-mail address of blessedfavor23@gmail.com—the contact

e-mail address for an SBA EIDL application of a deceased victim, Melinda Jacobs.

Another known phone number of Williams, (404)661-7515 (listed as Williams's contact

number for her internet service with Comcast), is listed as the contact phone number.

### TECHNICAL TERMS

38.    Based on my training and experience, I use the following technical terms

to convey the following meanings:

    a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular

        telephone) is a handheld wireless device used for voice and data

        communication through radio signals. These telephones send signals

        through networks of transmitter/receivers, enabling communication with

        other wireless telephones or traditional "land line" telephones. A wireless

        telephone usually contains a "call log," which records the telephone

        number, date, and time of calls made to and from the phone. In addition to

        enabling voice communications, wireless telephones offer a broad range of

        capabilities. These capabilities include: storing names and phone numbers

        in electronic "address books;" sending, receiving, and storing text

        messages and e-mail; taking, sending, receiving, and storing still

        photographs and moving video; storing and playing back audio files;

        storing dates, appointments, and other information on personal calendars;

        and accessing and downloading information from the Internet. Wireless

        telephones may also include global positioning system ("GPS")

        technology for determining the location of the device.

b. IP Address: An Internet Protocol address (or simply "IP address") is a
unique numeric address used by computers on the Internet. An IP address
is a series of four numbers, each in the range 0-255, separated by periods
(e.g., 121.56.97.178). Every computer attached to the Internet computer
must be assigned an IP address so that Internet traffic sent from and
directed to that computer may be directed properly from its source to its
destination. Most Internet service providers control a range of IP
addresses. Some computers have static—that is, long-term—IP addresses,
while other computers have dynamic—that is, frequently changed—IP
addresses.

c. Internet: The Internet is a global network of computers and other
electronic devices that communicate with each other. Due to the structure
of the Internet, connections between devices on the Internet often cross
state and international borders, even when the devices communicating
with each other are in the same state.

39.     Based on my training, experience, and research, and from consulting the
manufacturer's advertisements and product technical specifications available online at
https://www.apple.com/iphone-12-pro/ and https://www.apple.com/iphone-12/, I know
that the Devices have capabilities that allow them to serve as a wireless telephone, digital
camera, portable media player, GPS navigation device, and PDA.  In my training and
experience, examining data stored on devices of this type can uncover, among other
things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

41.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

43.  *Manner of execution.* Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

44.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items

described in Attachment B.

_____
Special Agent Ryan H. Campbell
U.S. Department of Treasury
Treasury Inspector General for Tax Administration


Affidavit submitted by email and attested to me as true and accurate by telephone
consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this ___ day of July, 2021.

Honorable Thomas M. DiGirolamo
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is (i) an Apple iPhone 12 Pro Max, International Mobile Equipment Identity (IMEI) number 351572595664379, and (ii) an Apple iPhone 12, IMEI number 353039112780573 (the "Devices"). The Devices are currently located at Treasury Inspector General - Tax Administration Office, 5000 Ellin Rd, Ste C8-100, Lanham, MD 20706.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### ITEMS TO BE SEIZED

All records contained in the items described in Attachment A which constitute evidence of violations of 18 U.S.C. §§ Sections 1343 (wire fraud) and 1028A (aggravated identity theft), as outlined below:

1. All of the following items:

   a. Records relating to the electronic access of the Internal Revenue Service's ("IRS") computer systems or the submission of tax forms to the IRS.

   b. Records relating to the electronic access of the Small Business Administration's ("SBA") computer systems or the submission of Economic Injury Disaster Loan applications.

   c. Records relating to personally identifying information for any individual other than Calah Williams, including bank account information, postal or electronic mail addresses, social security numbers, and dates of birth for known or unknown victims.

   d. Records, documents, data, metadata and/or correspondence, including: financial statements; bank statements; tax records; receipts; memorandums; deposit and withdrawal records; records regarding monies paid, deposited or transferred, such as financial records, wire transfers, logs, summaries, spreadsheets, or related correspondence, and other banking records, that pertain to the location of funds derived from or utilized in the above-named violations.

2. Any and all records related to the location of the user(s) of the devices.

3.   For each of the Devices:

   a.   Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b.   evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c.   evidence of the lack of such malicious software;

   d.   evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence;

   e.   evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Devices;

   f.   evidence of the times the Devices were used;

   g.   passwords, encryption keys, and other access devices that may be necessary to access the Devices;

   h.   documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;

   i.   contextual information necessary to understand the evidence described in this attachment.

With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

   1.      surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

   2.      "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

     3.    "scanning" storage areas to discover and possible recover recently deleted files;

     4.    "scanning" storage areas for deliberately hidden files; or

     5.    performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

     6.    If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.  If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.  The investigative team will take no further steps regarding any review of information so segregated absent further order of the court.  The investigative team may continue to review any information not segregated as potentially privileged.